Emory NEWMAN, et al., Plaintiffs,

v.

Guy HUNT, et al., Defendants.

No. CV-92-A-149-S.

United States District Court,
M.D. Alabama, S.D.

March 17, 1992.

James U. Blacksher, John C. Falkenberry, Leslie M. Proll, Edward Still, Birmingham, Ala.; Terry G. Davis, Montgomery, Ala., for plaintiffs.

Mary F. Gunter, Abbeville, Ala., for defendants.

## ORDER

ALBRITTON, District Judge.

This cause is now before the court on the motion for class certification, the motion to intervene filed by Annie Kate Williams, and the motions to dismiss filed by the defendants. For the following reasons, this court grants the motion for class certification, denies the motion to intervene and grants in part and denies in part the motion to dismiss.

## FACTS

On December 27, 1991, the Commissioner of Henry County from District Four, Coleman D. Williams, died. Mr. Williams was an African–American and District Four has a majority African–American population. Shortly thereafter, Governor Guy Hunt was informed of the vacancy on the Henry County Commission as a result of Mr. Williams' unfortunate death. The Governor advised his Appointment Secretary, Chuck Spurlock, to begin a search for a replacement to serve the remainder of Mr. Williams' unexpired term on the Henry County Commission. The term runs until January, 1995. Two names were submitted to the Governor for consideration, Quinn Ethridge and Annie Kate Williams. Mr. Ethridge is white. Mrs. Williams is an African–American and the widow of Coleman D. Williams. Governor Hunt appointed Mr. Ethridge to fill the vacancy. This suit was thereafter filed against Guy Hunt, as Governor of the State of Alabama, Henry County, and the Henry County Commission.

## ANALYSIS

### A. Motion for Certification of a Class Action

■ The complaint alleges violations of rights under the Voting Rights Act and that Henry County's current districting plan is in violation of the plaintiffs' rights to one-person, one-vote, as guaranteed by the Fourteenth Amendment to the Constitution of the United States. Any violation of these rights would be the same for every African–American citizen of Henry County. Therefore, Class Certification under Rule 23(b)(2), *Fed.R.Civ.P.*, is appropriate.

### B. Motion to Intervene

■ Mrs. Williams is a member of the class as described above. Mrs. Williams has not presented the court any legal or practical interests that are not represented by her inclusion in the plaintiffs' class and by the existing named plaintiffs. Therefore her intervention is unnecessary.

### C. Motion to Dismiss

Plaintiffs' complaint alleges five causes of action. The first four causes of action relate to the Governor's appointment of Mr. Ethridge to the Henry County Commission. The fifth cause of action alleges that if the 1992 Henry County Commission elections were to be held under the present districting plan, it would violate the plaintiffs' rights to the constitutionally mandated "one-person, one-vote" scheme of representation, based upon the 1990 census.

#### 1. *Causes One through Four*

■ With regard to the first four causes of action, which defendant Hunt says fail to state claims for which relief can be granted, an analysis of the allegations of the complaint is necessary. For this purpose the truth of the allegations is assumed.

The complaint alleges that Henry County began electing county commissioners from single-member districts in 1986 pursuant to a consent decree entered in the case of

*Diggs v. Henry County,* CA No. 85-V-1331-S, in this court. The decree remedied a violation of the Voting Rights Act caused by the then existing at-large method of election. The decree provided that the approved plan would be submitted to the Legislature of Alabama to be enacted as state law. Court jurisdiction was retained only until legislative enactment of the plan. The single-member plan was enacted by the legislature in 1987 as Act No. 87–334.

As to the filling of vacancies, Act No. 87–334 provides, in Section 6, that:

Any vacancy occurring in the office of county commissioner shall be filled in the manner otherwise provided by law concerning the filling of vacancies of Henry County Commissioners.

The "manner otherwise provided by law" is found in § 11–3–6, *Code of Alabama,* 1975, as follows:

In case of a vacancy [on the county commission], it shall be filled by appointment by the governor, and the person so appointed shall hold office for the remainder of the term of the commissioner in whose place he is appointed.

Following the death of Commissioner Williams, the Judge of Probate of Henry County, who also serves as Chairman of the County Commission, requested the governor to appoint the Commissioner's widow to fill his unexpired term. It is alleged that in doing so he was acting pursuant to clearly expressed wishes of residents of the district in question, District 4. The complaint further alleges that Governor Hunt did not consult with the voters or political leaders of District 4 before making an appointment, and that in appointing Mr. Ethridge to fill the vacancy, Governor Hunt ignored the wishes of the Henry County Commission.

Plaintiffs allege that Governor Hunt's appointment of a commissioner who clearly is not the choice of the black electoral majority in District 4 defeats the remedial purpose of the earlier consent decree, that

the manner in which the governor applied the statute authorizing him to fill vacancies and the governor's failure and refusal to consult the majority black electorate of District 4 and to abide by their wishes results in a denial or abridgement of the rights of black citizens in violation of Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973, and that the governor acted with the invidious purpose or intent, and with the effect, of denying or abridging the rights of black citizens in violation of the Fourteenth and Fifteenth Amendments and Section 2 of the Voting Rights Act.

As relief, plaintiffs ask the court to require that the position of commissioner for District Four be declared vacant and placed on the ballot for the 1992 elections.

The question presented by the governor's motion to dismiss is whether these facts, taken as true, would authorize a federal court to set aside the appointment made by the governor under the provisions of a state statute and require that the vacancy on the county commission be filled by election. This court clearly has no such authority.

At oral argument on the motion, plaintiffs agreed that they did not challenge the validity of the statutory provision for appointment by the governor, rather than election by the voters of the affected district, in filling vacancies on the county commission.[1] They conceded that this did not violate the earlier consent decree and that this provision in Act No. 87–334, which did not in any way expressly restrict the authority of the governor in filling vacancies, had received preclearance by the Justice Department under Section 5 of the Voting Rights Act. It is the *manner* in which the governor exercised his right of appointment that is challenged.

The plaintiffs do not contend that a governor's discretion is subject to limits in filling vacancies in all county commission districts, but only in majority black districts. They argue that the Fourteenth and

---

1. Section 11–3–6, *Code of Alabama,* was originally passed by the legislature in 1852. It has been modified or reenacted at least seven times. It has been in existence for every county commission redistricting plan submitted to the Justice Department for Section 5 preclearance since the Voting Rights Act was enacted.

Fifteenth Amendments and the Voting Rights Act impose limits on the governor's discretion in those districts. They do not contend that this necessarily requires the appointment of a black replacement, but they contend that the appointment must be generally acceptable to the majority of the voters in the district. Such general acceptability may be determined, they argue, by consultation with the voters and the political leadership in the district.

The Voting Rights Act, 42 U.S.C. § 1973 provides as follows:

(a) No *voting* qualification or prerequisite to *voting* or standard, practice or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States *to vote* on account of race or color....

(b) A violation of subsection (a) of this section is established if, based on the totality of the circumstances, it is shown that the *political processes leading to nomination or election* in the State or political subdivision are not equally open for participation by members of a class of citizens protected by subdivision (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice....

(Emphasis supplied.)

A plain reading of the statute clearly shows that the rights being protected are the right to vote and the opportunity to elect. Participation in nomination is also protected as a necessary ingredient in the electoral process. This presupposes an election and guarantees rights when an office is elective. In this case, the plaintiffs do not contend that the statutory provision making the filling of vacancies a matter of appointment, rather than election, violates the Act.

The Voting Rights Act requires that minorities must be given the opportunity to elect candidates of their choice. It is agreed that the voters of District 4 had that opportunity when they elected Com-

missioner Williams in 1990 to a four year term. They had the same opportunity in that year in the gubernatorial election, although the complaint alleges that Governor Hunt did not receive substantial black support. The court has been cited to no provision in the Voting Rights Act and to no court decision which requires that a majority of the voters in any district must be satisfied with an appointment to fill a vacancy. Such a requirement would certainly be unworkable.

Either a governor has full discretion to fill a vacancy by an appointment of the governor's choice, or, the law should require an election in all cases. Once the idea of placing restrictions on the exercise of discretion in making appointments is accepted, the final decision is inevitably shifted from the governor, elected by the people, to someone else. Without an election, how is the "general acceptability" of a proposed appointee to be determined? By a poll? Whose poll? By a vote of the county commission? Unanimous vote or majority? What if that vote differs from the result of a poll? By the district's "political leadership"? Whom is that?

The plaintiffs argue that the question of general acceptability is fact specific and that a federal judge may make that decision on the basis of the facts presented in each individual case. That is, of course, where the final decision ultimately would be shifted if the plaintiffs' position is accepted. It is a shift that this court does not find to be supported by the language of the Constitution or the Voting Rights Act, by the decisions of any court, or by the basic concepts of our system of government.

The issue in this case is much larger than whether the voters of Henry County Commission District 4 are satisfied with the individual appointed by Governor Hunt to represent them, or with the process used by the governor in making the selection. If the court may satisfy the wishes of the voters in this instance by restricting the discretion of an elected governor to make appointments, the court may just as easily frustrate the wishes of these same voters

at another time and under other circumstances. In this court's opinion, this is a door best left unopened. The law does not require a vacancy on the county commission to be filled by election, or by the county commission, or by a local nominating commission. The legislature has placed this decision in the hands of the governor. The court will leave it there.

Defendant Hunt's motion to dismiss is due to be granted as to plaintiffs' causes of action one through four.

### 2. *Cause Five*

 In regard to the plaintiffs' fifth cause of action, the Equal Protection Clause requires that districts be of nearly equal population, so that each person's vote may be given equal weight in the election of their representatives. *Connor v. Finch,* 431 U.S. 407, 416, 97 S.Ct. 1828, 1834, 52 L.Ed.2d 465 (1977). It was recognition of this fundamental tenet that originally motivated judicial involvement in what has been called the "political thicket" of apportionment. *Id.* (citing *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962)). Population equality has become a demanding standard requiring justification for each variance no matter how small. *Karcher v. Daggett,* 462 U.S. 725, 730, 103 S.Ct. 2653, 2658, 77 L.Ed.2d 133 (1983). Therefore, any claim alleging a population variance would be a viable claim and not subject to a motion to dismiss. This claim, however, is only against the County defendants, therefore, since all claims against the Governor are to be dismissed, he should be dismissed as a party.

### CONCLUSION

It is, therefore, ORDERED as follows:

1. Plaintiffs' motion for class certification is GRANTED. The plaintiff class is defined as all African–American citizens of Henry County, Alabama.

2. The motion of Annie Kate Williams to intervene is DENIED.

3. Defendant Hunt's motion to dismiss is GRANTED as to Causes of Action One, Two, Three and Four, DENIED as to Cause of Action Five, and Defendant Hunt is DISMISSED as a party defendant.

4. Defendant Henry County's and Henry County Commission's motion to dismiss plaintiffs' Cause of Action Five is DENIED.