825 F.Supp. 885 (1993)
AFRICAN-AMERICAN CITIZENS FOR CHANGE, Plaintiff,
v.
David A. ROBBINS, et al., Defendants.
No. 4:93 CV 18 SNL.
United States District Court, E.D. Missouri, E.D.
June 30, 1993.
*886 Eric E. Vickers, Vickers and Associates, St. Louis, MO, for plaintiff.
C. John Pleban, Partner, George A. Kiser, Greenberg and Pleban, Julian L. Bush, Assoc. City Counsel, Edward J. Hanlon, City of St. Louis, Law Dept., St. Louis, MO, for defendants.

MEMORANDUM
LIMBAUGH, District Judge.
Plaintiff has filed this action alleging that Chapter 84 of the Missouri Revised Statutes, which mandates that the Governor appoints the four members (exclusive of the Mayor) of the Board of Police Commissioners for the City of St. Louis, violates the Voting Rights Act, 42 U.S.C. § 1973 (as amended). Plaintiff alleges that African American residents in St. Louis are unable to participate in the nomination process because Chapter 84 empowers the Governor to nominate and select Police Board commissioners without review. This matter is before the Court on the defendants' motion to dismiss (# 3), filed March 3, 1993. Responsive pleadings have been filed.
The plaintiff in this action is a not-for-profit corporation consisting of members residing in the City of St. Louis whose purpose is to "promote a progressive change in the African American community in the City of St. Louis through enhancing the electoral power of African American citizens in the City." Plaintiff's Complaint, pg. 1. The defendants are the Board of Police Commissioners for the City of St. Louis, and the individual Board members, including the Mayor of the City of St. Louis.[1] The defendants seek dismissal pursuant to Rule 12(b)(6), for lack of standing, and for naming improper party defendants.
The plaintiff alleges that although the voting-age population of the City of St. Louis is 42.7% African American, the Board of Police Commissioners is appointed by the Governor, who is elected through state-wide elections in which African Americans constitute only 9.7% of the voting-age population. Plaintiff contends that this scheme dilutes the voting power of African Americans in the City. Plaintiff further contends that although African American residents in the City constitute a higher number of crime victims, they have no influence over the selection of the Police Board which regulates the St. Louis City police department. Plaintiff claims that the appointment scheme of Chapter 84 "deprives African American voters who reside in St. Louis the right to exercise the same degree of influence and control over their public safety and welfare as that enjoyed by white citizens of the State of Missouri in violation of the Voting Rights Act." Plaintiff's Complaint, pg. 3. Plaintiff seeks a declaration that Chapter 84 is invalid, a declaration that control of the St. Louis Metropolitan Police Department be held by the municipal government, and an injunction enjoining the appointment of any members to the Board of Police Commissioners for the City of St. Louis.
Chapter 84 of the Missouri Revised Statutes reads in pertinent part:
Beginning on January 9, 1989, the governor of the state of Missouri, by and with the advise and consent of the senate, shall appoint the four commissioners provided for in section 84.020, and one commissioner shall be appointed for a term of one year; one commissioner shall be appointed for a term of two years; one commissioner shall be appointed for a term of three years; one commissioner shall be appointed for a term of four years. Their successors shall *887 each be appointed for a term of four years, and said commissioners shall hold office for their term of appointment and until their successors shall have been appointed and qualified ...
In addition to the four appointed members of the Police Board, the Mayor of the City of St. Louis is also a voting member of the Board. § 84.020 R.S.Mo.
Plaintiff's legal theory is that § 84.030 R.S.Mo. violates Section 2 of the Voting Rights Act because the appointment of the Board members by the Governor, who is elected state-wide wherein the African American voting population is a minority, denies the African American voting citizens of the City of St. Louis the ability to nominate and vote for Board members, although African Americans constitute 42.7% of the voting population of the City. The Court determines that plaintiff's legal theory fails to state a claim under the Voting Rights Act.
Section 2 of the Voting Rights Act, 42 U.S.C. § 1973, as amended in 1982, reads:
(a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth in Section 1973b(f)(s) of this title, as provided in subsection (b) of this section. (b) A violation of subsection (a) of this section is established if, based on the totality of the circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: Provided, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.
This Court concurs with the defendants' position that Section 2 of the Voting Rights Act is inapplicable to the present situation because Missouri has chosen an appointive system over an elective scheme for selecting members to the Police Board.
On its face, the plain language of the Act clearly demonstrates its applicability only to those systems in which officials are chosen through an election. The Act itself is entitled the Voting Rights Act (emphasis added). Section 2 uses the words election, to elect, and electorate. The terms "vote" and "voting" are defined in the Act to include "all action necessary to make a vote effective in any primary, special, or general election ..." § 1973l(c)(1). The Act further defines vote and voting as "casting a ballot, and having such ballot counted properly and included in the appropriate totals of votes cast with respect to candidates for public or party office and propositions for which votes are received in an election." Id.
Several courts, including the United States Supreme Court, have addressed the applicability of Section 2 and Section 5[2] under different circumstances. Despite the varied fact patterns, these cases have all clearly found the Voters Rights Act applicable only in cases where an official is elected.
In Thornburg v. Gingles, 478 U.S. 30, 106 S.Ct. 2752, 92 L.Ed.2d 25 (1986), the Court stated that "[t]he essence of a § 2 claim is that a certain electoral law, practice, or structure interacts with social and historical conditions to cause an inequality in the opportunities enjoyed by black and white voters to elect their preferred representatives." Id., 478 U.S. at 47, 106 S.Ct. at 2764. The issue was the plaintiffs' claim that their ability to elect the representatives of their choice was impaired by the selection of the State of *888 a redistricting plan encompassing multimember districts. Thornburg clearly found Section 2 of the Act to cover situations in which a state law affects the electoral process so as to create inequalities in the opportunities to elect representatives on the basis of race or residency.
In Chisom v. Roemer, ___ U.S. ___, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991), the Court more clearly defined "representatives" and held that judicial elections, more specifically, the elections of justices to the Supreme Court of Louisiana, are covered by § 2 of the Voting Rights Act. Id., ___ U.S. at ___, 111 S.Ct. at 2371. The Court defined "representatives" as "winners of representative, popular elections"; i.e. "someone who has prevailed in a popular election ..." Id., ___ U.S. at ___, 111 S.Ct. at 2366. Once again, the Court uses the term "election" consistently throughout its opinion. In its concluding remarks, the Court noted that the Voting Rights Act had been enacted to remedy the country of racial discrimination in voting. Id., ___ U.S. at ___, 111 S.Ct. at 2368, citing South Carolina v. Katzenbach, 383 U.S. 301, 315, 86 S.Ct. 803, 811, 15 L.Ed.2d 769 (1966) (emphasis added). It further noted that in giving the Act the "broadest possible scope" in combatting racial discrimination, "[i]t is difficult to believe that Congress, in an express effort to broaden the protection afforded by the Voting Rights Act, withdrew, without comment, an important category of elections from that protection." Id., ___ U.S. at ___, 111 S.Ct. at 2368 (emphasis added).
In a companion opinion to Chisom v. Roemer, the Supreme Court held that Section 2 of the Voting Rights Act was also applicable to the election of trial judges in Texas. Houston Lawyers Ass'n v. Attorney General of Texas, ___ U.S. ___, 111 S.Ct. 2376, 115 L.Ed.2d 379 (1991). The Court held that the coverage of the Act "encompasses the election of executive officers and trial judges whose responsibilities are exercised independently in an area coextensive with the districts from which they are elected." Id., ___ U.S. at ___, 111 S.Ct. at 2380 (emphasis added). The Court specifically noted the distinction between electing state judges and appointing state judges and the significance of such a distinction with regard to the Voting Rights Act's coverage. "If a State decides to elect its trial judges, as Texas did in 1861, those elections must be conducted in compliance with the Voting Rights Act." Id., ___ U.S. at ___, 111 S.Ct. at 2380 (emphasis added).
Several lower courts have specifically found the Voting Rights Act inapplicable to appointive offices. In Irby v. Virginia State Board of Elections, 889 F.2d 1352 (4th Cir. 1989), the appellate court raised serious concerns about whether Virginia's choice of an appointive system rather than an elective scheme for selecting school board members implicates Section 2 of the Act. Id., at 1357. The Fifth Circuit Court of Appeals refused to apply Section 2 of the Act to an appointive system for school board members. Searcy v. Williams, 656 F.2d 1003, 1010 (5th Cir.1981) aff'd, Hightower v. Searcy, 455 U.S. 984, 102 S.Ct. 1605, 71 L.Ed.2d 844 (1982). In Dillard v. Crenshaw County, Alabama, 831 F.2d 246 (11th Cir.1987), the appellate court addressed the issue of whether a proposal for restructuring of election scheme for county commission which allowed at-large election of chairperson violated the Voting Rights Act. The County defendant attempted to argue that the chairperson would be functioning as a county administrator, and therefore outside the scope of Section 2. The Court held that "[n]owhere in the language of Section 2 nor in the legislative history does Congress condition the applicability of Section 2 on the function performed by an elected official. The language is only and uncompromisingly premised on the fact of nomination or election." Id., at 250-51 (emphasis added). Recently, the District Court for the Southern District of Indiana held that the Act covered the retention elections of state judges, but not their initial appointments. Bradley v. Indiana State Election Board, 797 F.Supp. 694, 697 (S.D.Ind.1992).
Finally, this Court notes that although the Supreme Court has not directly addressed the issue of applicability of Section 2 of the Voting Rights Act to an appointive system, it has specifically held that judges appointed, instead of elected, would be excluded from coverage of the Act. "Louisiana could, of *889 course, exclude its judiciary from the coverage of the Voting Rights Act by changing to a system in which judges are appointed ..." Chisom v. Roemer, ___ U.S. at ___, 111 S.Ct. at 2367.
It is this Court's considered opinion that the Voting Rights Act, as amended, does not apply to Missouri's appointive system in selecting members to the Board of Police Commissioners for the City of St. Louis. Consequently, Chapter 84 of the Missouri Revised Statutes does not violate the Voting Rights Act.
Even given the Plaintiff's argument that electing the Governor of Missouri through state-wide elections and empowering the Governor to appoint the Police Board Commissioners somehow dilutes the voting power of the African American voting populace in the City of St. Louis, the Court still finds a failure to state a claim pursuant to the Voting Rights Act.
The plaintiff claims that it falls under the protection of the Act because it cannot participate in the nomination of Board members. This argument fails for two reasons.
Firstly, the plain language of Section 2 of the Act clearly refers to the nomination of "representatives", as that term is defined by the United States Supreme Court. See, Chisom v. Roemer, supra. The members of the Board of Police Commissioners do not fall within the definition of "representatives". Secondly, assuming arguendo that the nomination of commissioners did fall within the purview of Section 2, the plaintiff has failed to allege in what way it has been denied or accorded less opportunity to participate in the nomination process than the white voting populace of the City of St. Louis. Contrary to the plaintiff's assertions, the Governor does not appoint the Board members without review. § 84.030 R.S.Mo. clearly states that the Governor appoints the Board members with the advice and consent of the state senate. The plaintiff has failed to allege in any way how it has been unable to effectively participate in the political process culminating in the nomination and appointment of Board members given that not only can the plaintiff's membership cast votes for governor, but also elects members to the state senate. In order to successfully prove a claim under the Voting Rights Act, plaintiff must not only support a claim regarding an alleged inability to elect representatives of its choice, but also show that members of the protected class have less opportunity to participate in the political process. Chisom v. Roemer, ___ U.S. at ___, 111 S.Ct. at 2365. The statute does not create two separate and distinct causes of action. The opportunity to participate and the opportunity to elect are "inextricably linked". Chisom v. Roemer, ___ U.S. at ___, 111 S.Ct. at 2365. Plaintiff has not demonstrated in any way how it's voting rights and participation rights have been denied or impaired because the Board members are appointed by the Governor with final approval by the state senate. There is no allegation that the plaintiff has been unable to meaningfully participate in the elections of representatives to the state senate. The plaintiff has failed to make any allegations or set forth any facts as to the circumstances surrounding the election of Governor Carnahan, the election of any state senator, or more importantly, the selection of the current members of the Police Board. The same questions posed by the Irby Court are applicable here. Did the Governor receive wide-spread black support in the recent election state-wide? Did the Governor receive wide-spread black support from the African American St. Louis City voting populace? Were the new appointees to the Police Board supported by black legislators? The mere fact that at any given time, the racial composition of the Police Board may not mirror the racial ratio of the voting populace in the City of St. Louis does not prove that racial discrimination exists.
The plaintiff seeks for this Court to extend the meaning and coverage of the Voting Rights Act beyond that which this Court believes Congress intended. The purpose of the Voting Rights Act is to protect minority voters. However, this essential purpose cannot be stretched beyond reasonableness in an attempt to get a federal court to tread upon important interests of state and local government.

*890 "Where Congress acts in a field that is within its constitutional competence, but has not clearly spoken, a federal court should construe the congressional enactment in a manner that recognizes and preserves a healthy balance between state and national power. A concern for federalism cautions against excessive entanglement of federal courts in state election contests."
Roberts v. Wamser, 883 F.2d 617, 622-23 (8th Cir.1989) (no cause of action under Voting Rights Act for an unsuccessful candidate for political office). In the present case, there isn't even an election at issue. Just because voting is indirectly implicated does not automatically create a Voting Rights Act cause of action. The Supreme Court recently recognized this fact when addressing the coverage of Section 5 of the Act.
"Some standard is necessary, for in a real sense every decision taken by government implicates voting. This is but the felicitous consequence of democracy, in which power derives from the people. Yet no one would contend that when Congress enacted the Voting Rights Act it meant to subject all or even most decisions of government in covered jurisdictions to federal supervision. Rather, the Act by its terms covers any `voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting.' 42 U.S.C. § 1973c. A faithful effort to implement the design of the statute must begin by drawing lines between those governmental decisions that involve voting and those that do not."
Presley v. Etowah County Commission, ___ U.S. ___, ___, 112 S.Ct. 820, 829, 117 L.Ed.2d 51 (1992). That line is today being drawn by this Court.
Furthermore, the Court joins with the Missouri state courts in taking judicial notice that the state's retention of control over the St. Louis City police force is legal. See, Slater v. City of St. Louis, 548 S.W.2d 590, 593 (Mo.App.1977) citing State ex rel. Hawes v. Mason, 153 Mo. 23, 54 S.W. 524 (1899). The federal court is not the proper forum for the plaintiff to challenge § 84.030 R.S.Mo. If the appointive system for the Board members is unacceptable to the plaintiff, then it should seek its redress through the Missouri legislature.
Although it is unnecessary (and not crucial to the Court's finding that plaintiff has failed to state a claim under the Voting Rights Act), the Court would like to address briefly the issues of the plaintiff's standing and the status of the defendants.
The Court does not agree that the plaintiff is an "aggrieved party" under the Voting Rights Act. An "aggrieved party" is a private litigant suing to protect his/her right to vote. The Court is unable to determine how the plaintiff has been injured. The members of plaintiff have not had their right to vote impaired or denied in any way by the Governor's exercise of his appointive powers under § 84.030. Plaintiff asserts that its injury is the lack of direct participation in the political process by which individuals are nominated and appointed to the Board. Since members of the plaintiff do not allege that they are prevented from voting for the governor of their choice or the representatives to the state senate of their choice, the Court fails to understand what the plaintiff means by lack of direct participation. It fails to allege how it would have more direct participation in the nomination and appointment process if the procedure were in the hands of the municipal government, instead of the state senate and the governor.
Furthermore, although the plaintiff does not overtly allege, the Court surmises that since plaintiff's claim is based upon the fact that almost half of the voting populace in the City of St. Louis is African American, it believes that the racial composition of the Board should reflect this ratio. Again assuming arguendo that Section 2's reach extends so broadly as to encompass the present case, plaintiff has failed to allege that the appointive system for Police Board members has produced discriminatory results. See, Chisom v. Roemer, ___ U.S. at ___, 111 S.Ct. at 2363. Some showing of injury must be made. Garza v. County of Los Angeles, 918 F.2d 763, 771 (9th Cir.1990); Irby v. Virginia State Bd. of Elections, at 1358-59; Turner v. State of Arkansas, 784 F.Supp. 553, 569 (E.D.Ark.1991). There is no discriminatory effect insofar as the present *891 composition of the Board of Police Commissioners is concerned. Plaintiff avers that 42.7% of the voting-age populace in the City of St. Louis is African American. The current Board membership is 50% black and 50% white. Even if it weren't racially balanced, the Voting Rights Act (as amended) clearly states that Section 2 does not establish a right to proportional representation.
The Court also agrees that the Board of Police Commissioners and its members are not the proper party defendants. The Voting Rights Act specifically prohibits a state or political subdivision from engaging in any practices which deny or abridge a person's right to vote on the basis of race. Section 1973l (c)(2) defines a "political subdivision" as "any county or parish, except that where registration for voting is not conducted under the supervision of a county or parish, the term shall include any other subdivision of a State which conducts registration for voting." The Board of Police Commissioners and its members clearly do not fall within the definition of "political subdivision" as provided for in the Voting Rights Act. The Board of Police Commissioners is an administrative agency created by statute with the power to appoint, control and supervise the police force of the City of St. Louis. King v. Priest, 357 Mo. 68, 206 S.W.2d. 547 (1947); Scism v. Long, 280 S.W.2d. 481 (Mo.App. 1955). Since the plaintiff contends that the appointive system of § 84.030 R.S.Mo. violates the Voting Rights Act, the proper defendant is the State and/or the Governor for the State of Missouri. There are no allegations that the Board, itself, has engaged in any practice or established any prerequisite or standard which denies or abridges the plaintiff's members of their right to vote. Consequently, the Board has not engaged in any action prohibited by the Voting Rights Act and therefore should not be subject to defending a lawsuit brought under the Voting Rights Act.
Based upon the afore-stated reasons, the Court will grant the defendants' motion to dismiss.
NOTES
[1] Since the time of the filing of the plaintiff's complaint, several elections have taken place resulting in a new Mayor for the City of St. Louis, as well as a new Governor for the State of Missouri. The new Governor (Governor Mel Carnahan) recently appointed two new members to the Police Board. The current members of the Board are James R. Conway, Charles Mischeaux, Matthew Padburg, Anne-Marie Clarke, and Mayor Freeman R. Bosley, Jr.
[2] Section 5 of the Act is a companion section to Section 2. It requires a covered jurisdiction to obtain either judicial or administrative "preclearance" before enforcing any changes in the electoral process. Plaintiff concedes that it is not making any claim that Section 5 is applicable or has been violated in the present case.