**Tammi HOLLEY, Antonia W. Bell, Cotina W. Terry, Gwyn L. Adamson, Lathonia Wright, and Cheryl Sims, Plaintiffs,**

v.

**CITY OF ROANOKE, ALABAMA; Betty Ziglar, Mayor; Walter Sudduth, Buster Robinson, Richard Fetner, Council Members, Defendants.**

**No. CIV. A. 01–A–775–E.**

United States District Court,
M.D. Alabama,
Eastern Division.

Sept. 21, 2001.

A. Wesley Pitters, A. Wesley Pitters, P.C., Montgomery, AL, Artur G. Davis, The Law Office of Artur Davis, Birmingham, AL, for Tammi Holley, Antonia W. Bell, Cotina W. Terry, Gwyn L. Adamson, Lathonia Wright, Cheryl Sims, plaintiffs.

Thomas Oliver Kitchens, Oliver Kitchens, PC, Roanoke, AL, C. David Stubbs, Stubbs, Sills & Frye, PC, Anniston, AL, for City of Roanoke, Alabama, Betty Ziglar, Mayor, Walter Sudduth, Council Member, Buster Robinson, Council Member, Richard Fetner, Council Member, defendants.

### MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. INTRODUCTION

This cause is before the court on a Motion to Dismiss (doc. # 17) for failure to state a claim upon which relief can be granted filed by the Defendants, City of Roanoke, Alabama ("City of Roanoke"), Betty Ziglar, Walter Sudduth, Buster Robinson, and Richard Fetner (collectively "Defendants"), on July 9, 2001. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(3).

On June 25, 2001, the Plaintiffs, Tammi Holley, Antonia W. Bell, Cotina W. Terry, Gwyn L. Adamson, Lathonia Wright, and Cheryl Sims (collectively "Plaintiffs"), filed this action against the Defendants alleging violations of section 5 of the Voting Rights Act, 42 U.S.C. § 1973c ("First Federal Law Cause of Action"); section 2 of the Voting Rights Act, 42 U.S.C. § 1973, as amended ("Second Federal Law Cause of Action"); 42 U.S.C. § 1983 (Equal Protection Clause of the Fourteenth Amendment) ("Third Federal Law Cause of Action"); 42 U.S.C. § 1983 (First Amendment) ("Fourth Federal Law Cause of Action"); Alabama's "Sunshine" and "Open Meeting" laws, Ala.Code §§ 13A–14–2 and 11–34–49 ("First Pendent State Law Claim"); and section 173 of the Alabama Constitution of 1901 ("Second Pendent State Law Claim"). Subsequent to the filing of the Defendants' Motion to Dismiss, the three-judge court dismissed Plaintiffs' section 5 claim, see Order of the Three–Court dated July 12, 2001 (doc. # 21), and this court sua sponte dismissed Plaintiffs' pendent state law claims pursuant to 28 U.S.C. § 1367(c)(1). See Order dated July 16, 2001 (doc. # 23). Accordingly, the court now takes up the Defendants' Motion to Dismiss as it pertains to Plaintiffs' section 2 and section 1983 claims.

For the reasons to be discussed, the Defendants' Motion to Dismiss is due to be DENIED in part and GRANTED in part.

### II. MOTION TO DISMISS STANDARD

A court may dismiss a complaint only if it is clear that no relief could be granted

under any set of facts that could be proven consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984); *see also Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir.1986) (citation omitted) ("[W]e may not . . . [dismiss] unless it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims in the complaint that would entitle him or her to relief."). The court will accept as true all well-pleaded factual allegations and view them in a light most favorable to the non-moving party. *See Hishon,* 467 U.S. at 73, 104 S.Ct. 2229. Moreover, the court is aware that the threshold that a complaint must meet to survive a motion to dismiss is "exceedingly low." *See Ancata v. Prison Health Servs., Inc.,* 769 F.2d 700, 703 (11th Cir.1985) (citation omitted).

### III. *FACTS*

The allegations of Plaintiffs' Complaint are as follows:

Plaintiffs in this action are Tammi Holley ("Holley") (the elected Roanoke City Council representative for District One), Cheryl Sims ("Sims") (Holley's nominee/appointee to the Board of Education whose reappointment is the subject of this litigation), Lathonia Wright ("Wright") (the elected Randolph County Commission representative for the area that encompasses District One), and Antonia W. Bell, Cotina W. Terry, and Gwyn L. Adamson (residents and voters of District One). Defendants are the City of Roanoke, Roanoke Mayor Betty Ziglar ("Mayor Ziglar"), and the three white City Council representatives who voted against Sims' reappointment to the Board of Education, Walter Sudduth, Buster Robinson, and Richard Fetner (collectively "Council Defendants."). Mayor Ziglar and the Council Defendants are sued in their individual and official capacities. *See* Complaint at ¶¶ 12 & 13.

The Roanoke City Council consists of five members who each represent a single-member district. Districts One and Two of the City Council are majority black and have had African–American representatives ever since the elections held in 1988. Elections for the Roanoke City Council are conducted through a system of five single-member districts as the result of a consent decree entered in 1987. *See United States v. City of Roanoke,* CV–87–V–97–E (M.D.Ala.).

Plaintiffs allege in their Complaint that the status-quo practice for appointing members to the City of Roanoke Board of Education following entry of the 1987 consent decree has been to allow each of the five members of the City Council to select one Board of Education member. Because each City Council member represents a particular district within the City of Roanoke, this practice has allegedly had the implication that each member of the Board of Education has been indirectly answerable to a particular district within the City because each member has been understood by the public to be the Board of Education member for the district of the appointing City Council member. Plaintiffs claim that this appointment practice has had the effect of giving African–American voters in Roanoke a reasonable opportunity to participate in the political process relative to their designated membership on the Board of Education.

In the year 2000, Plaintiff Sims was appointed to the Board of Education at the request of Plaintiff Holley, the elected City Council representative for District One, to fill a vacancy created by the resignation of another member. Plaintiffs allege that Plaintiff Sims, by this appointment, served District One on the Board of Education.

On or about May 14, 2001, Plaintiff Holley (African–American female) and others attempted to have Plaintiff Sims (African–

American female) reappointed to the Board of Education. This attempt met with the resistance of the Council Defendants (the representatives of Districts Three, Four, and Five) and Mayor Ziglar, all of whom are white. With regard to the issue of the reappointment of Plaintiff Sims, the Council Defendants opposing her reappointment have a one vote advantage over the two City Council members from Districts One and Two who support Plaintiff Sims.

In three other City Council meetings, the Council Defendants and Mayor Ziglar have objected to Sims' reappointment, despite the support of her initial appointer, Plaintiff Holley. In these meetings, Council Defendants and Mayor Ziglar have attempted to appoint Kenneth Rowland ("Rowland") (African–American male) to replace Sims. Rowland has declined the appointment and was never supported by Plaintiff Holley. Plaintiffs claim that Defendants' refusal to allow the reappointment of Plaintiff Sims is contrary to the status-quo practice allegedly instituted after entry of the consent decree in 1987.

Plaintiffs allege that the Defendants' attempted ouster of Plaintiff Sims from the Board of Education is an illegal response to her frequent and vocal opposition to an alleged attempt on the part of the Defendants, among others, to work toward ending federal court supervision over the City of Roanoke School System.

## IV. DISCUSSION

Plaintiffs' remaining claims are for violation of section 2 of the Voting Rights Act, the Equal Protection Clause of the Fourteenth Amendment as made enforceable by 42 U.S.C. § 1983, and the First Amendment as incorporated by the Fourteenth Amendment and made enforceable by 42 U.S.C. § 1983.

The Defendants argue that Plaintiffs' section 2 claim is due to be dismissed because the allegations in this case fall outside the realm of section 2's applicability. Next, Defendants argue that all of Plaintiffs' section 1983 claims against Mayor Ziglar and the Council Defendants should be dismissed because those defendants enjoy absolute legislative immunity. Finally, Defendants contend that Plaintiffs' section 1983 claims against the City of Roanoke must fail because Plaintiffs have failed to allege that they suffered a constitutional injury as a result of a policy or custom of the City of Roanoke. The court will take these arguments up in turn.

### (A) *Second Federal Law Cause of Action: Section 2 of the Voting Rights Act*

■ Plaintiffs claim that the City Council's practice of allowing its members the unfettered right to appoint their own Board of Education members has evolved into a "standard, practice, or procedure" which impacts the voting rights of African–Americans in District One because those voters relied on this practice in voting for their City Council member, Plaintiff Holley. Under the alleged practice, Plaintiffs claim that African–American voters indirectly selected their own Board of Education member when they voted for their representative on the City Council. It is Plaintiffs' position that the refusal of a majority of the City Council to honor Plaintiff Holley's choice to reappoint Plaintiff Sims was a change in an established practice and that this change has resulted in a diminution of African–American voting power.

Section 2 of the Voting Rights Act provides as follows:

**Denial or abridgement of right to vote on account of race or color through voting qualifications or prerequisites; establishment of violation**

(a) No voting qualification or prerequisite to voting or standard, practice, or

procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color, or in contravention of the guarantees set forth ˙ in section 1973b(f)(2) of this title, as provided in subsection (b) of this section.

(b) A violation of subsection (a) of this section is established if, based on the totality of the circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered. Provided, that nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.

42 U.S.C. § 1973.

Defendants argue that section 2 is inapplicable in the present case because the system for selecting Board of Education members in the City of Roanoke is appointive and not elective. In support of their position, Defendants cite numerous cases adverse to Plaintiffs' theory of section 2 liability. *See, e.g., Mixon v. State of Ohio*, 193 F.3d 389, 407 (6th Cir.1999) (collecting cases) (holding that section 2 applies to elective and not appointive systems); *African–American Citizens for Change v. St. Louis Bd. of Police Comm'rs*, 24 F.3d

1052, 1053 (8th Cir.1994) (same); *Irby v. Virginia State Bd. of Elections*, 889 F.2d 1352, 1357 (4th Cir.1989) (implying that section 2 does not apply to appointive offices). This court will focus briefly on two of the cases cited by Defendants. *See Searcy v. Williams*, 656 F.2d 1003 (5th Cir. Sept. Unit B 1981),[1] *aff'd Hightower v. Searcy*, 455 U.S. 984, 102 S.Ct. 1605, 71 L.Ed.2d 844 (1982); *Dillard v. Crenshaw County, Ala.*, 831 F.2d 246 (11th Cir.1987).

In *Searcy*, registered African–American voters brought suit against the City of Thomaston, Georgia's Board of Education and its members. *Searcy*, 656 F.2d at 1005. The plaintiffs challenged, *inter alia*, the composition and method of selection of the school board as violative of section 2. The Thomaston Board of Education used an appointive system of member selection. Each year one board member would retire and that member, together with the remaining board, would select the new board member. *Id.* The district court in *Searcy* held that section 2 of the Voting Rights Act did not apply to the facts of the case. *Id.* at 1006. The former Fifth Circuit concurred in the district court's judgment. *Id.* at 1010 ("[T]his case involved an appointive rather than an elective scheme, and thus the district court was correct in holding that voting rights did not apply."). In *Dillard*, the Eleventh Circuit noted in a footnote that unelected positions are not subject to the Voting Rights Act. *Dillard*, 831 F.2d at 251 n. 12.

A plain reading of the statute clearly demonstrates its applicability only to those systems in which officials are chosen through an election. *African–American Citizens for Change v. Robbins*, 825 F.Supp. 885, 887 (E.D.Mo.1993). As the district court in *Robbins* noted, the Act itself is the *Voting* Rights Act (emphasis

---

**1.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding prece-

dent all decisions of the former Fifth Circuit issued prior to October 1, 1981.

added). *Id.* The rights being protected by section 2 are "the right to vote and the opportunity to elect." *Newman v. Hunt,* 787 F.Supp. 193, 196 (M.D.Ala.1992). "The language [of § 2] is only and uncompromisingly premised on the fact of nomination or election." *Dillard,* 831 F.2d at 251.

Responding to the weight of authority against them, Plaintiffs cite to two cases, *United States v. Marengo County Comm'n,* 731 F.2d 1546 (11th Cir.1984) and *Harris v. Graddick,* 593 F.Supp. 128 (M.D.Ala.1984) (Thompson, J.), to support their argument that section 2 should apply to appointive as well as elective systems. Plaintiffs' argument is flawed. Both *Marengo County* and *Graddick* deal with section 2 of the Voting Rights Act and the appointment of African–Americans as poll workers, but they are inapposite to the present case because they apply to elective systems. For example, in *Graddick,* black citizens throughout Alabama claimed that county officials across the state appointed disproportionately too few African–American persons as poll officials during elections in violation of section 2. *Id.* at 130. The evidence before Judge Thompson demonstrated that the presence of black poll officials during an election went "a long way toward ... opening up the political process" to blacks who would otherwise have been intimidated away from polling places. *Id.* at 131. After finding that there was a gross underrepresentation of black persons among poll officials in Alabama and a well documented history of discrimination that was likely to impede and impair the access of black persons to

vote in primary and general elections, Judge Thompson found that, given section 2's prohibition of practices which deny or abridge a citizen's right to vote on account of color, the issuance of a preliminary injunction requiring the various defendants to take measures to appoint additional black poll officials would open up the electoral process to African–Americans. *Id.* at 137.

*Graddick* stands in stark contrast to the present case. The appointment of African–American poll officials in *Graddick* dealt with barriers to access to the electoral process. Here, there is no electoral process. The Board of Education members, by whatever agreement exists or existed between the City Council members, are appointed, not elected. Because they are not elected officials, section 2 has no application. *Cf. Chisom v. Roemer,* 501 U.S. 380, 401, 111 S.Ct. 2354, 115 L.Ed.2d 348 (1991) (noting that the State of Louisiana could exclude its judiciary from the coverage of the Voting Rights Act by changing to a system in which judges are appointed.). The court determines that Plaintiffs' legal theory fails to state a claim under the Voting Rights Act. Accordingly, Plaintiffs' Second Federal Law Cause of Action premised on section 2 of the Voting Rights Act is due to be dismissed.

(B) *Third and Fourth Federal Law Causes of Action: Section 1983 Claims*

1. *Mayor Ziglar and the Council Defendants* [2]

■ Defendants also claim that Plaintiffs' section 1983 claims against Mayor

---

**2.** Plaintiffs' section 1983 claims are not filed against Mayor Ziglar and the Council Defendants in their individual capacities only. Plaintiffs have also sued Mayor Ziglar and the Council Defendants in their official capacities, along with the City of Roanoke. Claims against municipal officers in their official capacity are "functionally equivalent" to claims

against the entity they represent. *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir.1991). To retain this suit as one against Mayor Ziglar and the Council Defendants in their official capacity and also as one against the City of Roanoke would be "redundant and possibly confusing to the jury." *Id.* The court, therefore, will dismiss the section 1983

1342

Ziglar and the Council Defendants are due to be dismissed because those defendants enjoy absolute legislative immunity. Plaintiffs have not responded to this argument.

 The essence of absolute legislative immunity is its holder's entitlement not to have to answer for his conduct in a civil action. *See Ellis v. Coffee County Bd. of Registrars,* 981 F.2d 1185, 1189 (11th Cir.1993). Local legislators are entitled to absolute immunity from suit under section 1983 for actions taken in their legislative capacities. *Bogan v. Scott–Harris,* 523 U.S. 44, 49, 118 S.Ct. 966, 140 L.Ed.2d 79 (1998). Additionally, the acts of an executive official which are formally legislative are also protected by legislative immunity. *Id.* at 55, 118 S.Ct. 966. "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." *Id.* at 54, 118 S.Ct. 966. Therefore, this court is concerned solely with the legal question of whether the individual capacity defendants are entitled to legislative immunity, not whether Plaintiffs' section 1983 are potentially meritorious. *Ellis,* 981 F.2d at 1189.

 In the instant case, the act of voting on the reappointment of a Board of Education member was purely legislative. *See Bogan,* 523 U.S. at 55, 118 S.Ct. 966; *Woods v. Gamel,* 132 F.3d 1417, 1420 (11th Cir.1998) ("[V]oting . . . [is] manifestly in furtherance of legislative duties.") (citation omitted). Alabama law specifically vests the City Council with the authority to appoint Board of Education Members. *Ala. Code* § 16–11–3. In casting their votes against Plaintiff Sims, the Council Defendants were performing their duties under state law and exercising a quintessentially legislative function. Mayor Ziglar shares in the Council Defendants' immunity in

this case because she was engaging in the legislative process by presiding over the meetings of the City Council. Mayor Ziglar and the Council Defendants are, therefore, immune from civil rights liability based on any alleged wrongdoing in the performance of these legislative functions. All section 1983 claims against Mayor Ziglar and the Council Defendants in their individual capacities are due to be dismissed. *Cf. Gupta v. The Town of Brighton,* 9 F.Supp.2d 242 (W.D.N.Y.1998), *aff'd* 1999 WL 454355, 182 F.3d 899 (2nd Cir. 1999) (unpublished table opinion).

## 2. *The City of Roanoke*

Finally, Defendants urge this court to dismiss Plaintiffs' section 1983 claims against the City of Roanoke on the grounds that the Plaintiffs have not alleged that they were deprived of their constitutional rights as a result of a policy or custom of the City of Roanoke. Plaintiffs have not responded to this argument.

 There is, of course, no respondeat superior liability under section 1983. *Monell v. Dept. of Social Serv. of City of New York,* 436 U.S. 658, 690–692, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The City of Roanoke can only be held liable, therefore, if its refusal to reappoint Plaintiff Sims was unlawful and conducted pursuant to its official policy or custom. *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. Defendants contend that Plaintiffs' theory in this case, that the Council Defendants and Mayor Ziglar deviated from their usual practice of "rubber stamping" appointments, proves that no policy or custom of the City of Roanoke deprived Plaintiffs of their constitutional rights.

discrimination claims against Mayor Ziglar and the Council Defendants in their official capacities. *See id.* (affirming directed verdict

as to official capacity defendants where city remained as defendant).

The Defendants' argument as-sumes that no one act could be sufficient to set forward the official policy of the City of Roanoke. This assumption is mistaken. "A local government is liable under section 1983 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury....'" *Mandel v. Doe,* 888 F.2d 783, 791 (11th Cir.1989) (quoting *Monell,* 436 U.S. at 694, 98 S.Ct. 2018). Under certain circumstances, municipal liability may be imposed for a single decision made by a municipal policymaker. *Id.* at 792; *accord Godby v. Montgomery County Bd. of Educ.,* 996 F.Supp. 1390, 1404 (M.D.Ala.1998) ("Those who are charged with the status of final policymaker ... may set official policy ... with only one act.") (citing *Morro v. City of Birmingham,* 117 F.3d 508, 510 (11th Cir.1997)). Here, assuming the City Council to be the final policymaking authority for the City of Roanoke in this area of the City's business, if Council Defendants' and Mayor Ziglar's actions were unconstitutional, liability could be imposed on the City of Roanoke. Therefore, Defendants' Motion to Dismiss the section 1983 claims against the City of Roanoke is due to be denied.[3]

## V. *CONCLUSION*

For the reasons discussed, it is hereby ORDERED as follows:

1. The Motion to Dismiss is GRANTED as to the section 2 claim, and Plaintiffs' Second Federal Law Cause of Action for violation of section 2 of the Voting Rights Act is DISMISSED.

2. The Motion to Dismiss is GRANTED on all remaining claims as to all Defendants except the City of Roanoke, and all

3. The question of liability generally and liability as to separate Plaintiffs may be revisited

claims against Betty Ziglar, Walter Sudduth, Buster Robinson, and Richard Fetner in their individual and official capacities are DISMISSED.

3. In all other respects, Defendants' Motion to Dismiss is DENIED.

4. This case will proceed on Plaintiffs' Third and Fourth Federal Law Causes of Action (section 1983 claims) against the City of Roanoke.

5. The City of Roanoke is given until October 5, 2001 to Answer the Complaint.

on Motion for Summary Judgment.